here. You hear you. This honorable appellate court for the Second District is now open. The Honorable Justice and B. Jorgensen presiding along with Justices Mary S. Shostak and Liam C. Brennan. The case is number two 19 oh one 90 people of the state of Illinois plaintiff appellee versus Kellen L. Horn, defendant appellant arguing for the appellant Amanda J. Hamilton arguing for the appellee John G. Barrett. Um, Miss Hamilton, then are you ready to proceed? And you may proceed when you're ready, then. Thank you. Good morning, Justices Council, Mr Clerk and may it please the court. As a preliminary matter, I'd like to thank this court for the opportunity to argue this case as part of the pilot program. And I think it demonstrates and I certainly appreciate this district's commitment to hearing oral argument on these cases and ensuring that justice is done. And now turning to this case. This case is about what circumstances should be present before the state can search arrest and ultimately in prison an individual for 24 years for being a passenger in a car that is later found to have drugs in the trunk. This court has acknowledged that an individual's mere presence in a vehicle in which contraband is found is insufficient to establish probable cause for arrest and people be Drake. And that case is one that I'd like to discuss at length during this argument, because I think it's very, very instructive as to why error was was committed in this case. So as I set forth in the briefs, and I know this district well enough to know that your honors are all very well first in all of the briefs, but there are several issues that arose, the first being the stop itself. There's certain key factors that indicated at least or seem to indicate a pretextual nature of the stop, such as that the car was traveling 74 miles per hour in a 70 mile zone on I 90. And the trooper involved in the stop stated that his general policy was to give a ticket for nine miles per hour, nine miles per hour over the limit or more. And additionally, there was this issue of perhaps improper lane usage. But as this court articulated and people be Mueller, more is needed for improper lane usage, it can't just be striking lane or drifting slightly, you have to be traveling for prolonged period of time. And additionally, the trooper asked for both individuals IDs, including Mr. Horn, who is a passenger as opposed to just asking for the driver's driver's license after effectuating the stop. And the fact that within three minutes, canine officer Bart was on the scene to perform a free air sniff. So there's certain things did miss Hamilton, didn't he ask for the passenger's driver's license after he had determined that the driver's driver's license was suspended? No, he actually asked. Oh, I'm sorry. Oh, you want to hit your button? How's the one when you use your hands to talk, you hit stuff? How is it unusual, though, that that to ask for the passenger's driver's license, if you know that the driver suspended, he's not going to be able to drive the car? Is that? That makes sense. Justice Shostak. But at this point, he actually asked for both IDs at the same time. So it wasn't, is there anything improper about that from a constitutional standpoint? No, Your Honor. But like I said, it does raise a couple questions for me, it seems a little bit unsettling, given the totality of the other circumstances. So I was, I may just ask you to focus for a moment. pretextual stops, which this obviously was are entirely permissible, assuming that there's otherwise, you know, reasonable suspicion to believe that infraction was had and there was here. And you can ask people for their licenses, even passengers. And so long as it doesn't belong to stop, you can bring canine BART to do an exterior sniff. So it seems to me, though, all of that suggests that this wasn't a routine stop, the real issue is whether there was a probable cause to arrest, because I think everything leading up to that is not going to be of any constitutional significance. I think we should focus from that point forward. Absolutely, Justice, and thank you for that. You're correct. And I think that the main issue here is whether the warrantless arrest of Callan Horne was supported by probable cause. And that is kind of where we reach into People v. Drake. As this court has specifically stated, probable cause to arrest only exists from the totality of the facts and circumstances known to the officer at the time of the arrest would lead him to believe that the defendant, which has to be particularized to this person, Mr. Horne, was a person who committed a crime. And that's also supported by Ibarra v. Illinois, the Supreme Court case, that it has to be, the probable cause must be particularized. Now, in People v. Drake, this court had established, it was a situation where, again, there was a passenger in a car who there's a, later on found to be a backpack in the trunk, which contained a gun, $3,100 in cash, and bags of marijuana. And this court found that in that situation, there was no evidence that the passenger in the car had any degree of dominion or control over that area of the car, meaning the trunk, or the contraband, meaning the drugs and guns and cash that were found inside the backpack, or that he even knew what was inside the backpack. In this case, we have very, very similar facts. You have a passenger in a car who was later found that inside the trunk, there is a multitude of items, including an urn, and inside the urn, there's found to be cocaine. In this case, is the urn, is it presumed, and I think, from circumstantial evidence, that the ashes in the urn are the defendant's fathers? That's an excellent question, Justice Shostak, and that's actually a big point of contention, because the statement that the ashes were Mr. Horn's father's were not made until after the recognizing the urn and or the ashes is not the same thing as saying, I possessed the urn, or I kept it, it was mine, it was in my control, or that I ever knew that there were drugs placed inside of it. There's absolutely no evidence about, wait, I've always had it, I kept it on my mantle. We have no idea who had possession of the urn at any point in time. Well, when you have joint possession, you're generally going to proceed by circumstantial evidence. Nobody is, if we're going to say, hey, this is mine, we aren't going to be here. So, isn't it unusual, or is it improbable to use circumstantial evidence in order to determine who the contraband belongs to? Well, I think that, and then this kind of goes into the issue as well, dovetails nicely into whether or not the state proved their case beyond reasonable doubt, because you have those two prongs. You have the knowledge component, and then you have that intent to maintain control. And as this court said, in the case of People v. Ingram, there's four specific factors that go into knowledge. The visibility of the item from the defendant's possession, or from the defendant's position, wherever he or she might be, the amount of time the defendant has to observe the item, gestures or movements made to conceal the item that would otherwise indicate possession or knowledge of the item, the size of the item. And then the third and fourth districts in People v. Boaknum, Bailey, and Lindsay have also articulated miscellaneous factors that the court could consider that would indicate knowledge, such as regular ongoing control of the car, or giving the police a fake name, or fleeing the scene. None of those were present in this case. Go ahead, I'm sorry. No, please, Mary. There was testimony regarding seeing these two individuals on, I think it was I-90, several hours earlier in the same car. And I believe the defendant may have been driving at that time, if my memory serves me. That's correct, but I don't... Does that come into the fourth factor in the Ingram case? I believe that it could arguably lead to the amount of time to observe the item. But again, the item was inside the trunk. So there's no testimony or evidence that there was ever a time that my client went into the trunk and was observing it. So for that matter, he could have been driving the car at one point, and then they switched and he was the passenger. And there's no evidence that he ever saw anything in the trunk or was ever near the trunk. So I don't think the factors of knowledge are met. But it's a little different here, because neither Brown nor the defendant were the That's odd, perhaps. And then they're both driving the car within a three-hour period on the interstate. And that's a little different than if Brown were the registered owner. Doesn't that somehow speak to the idea that perhaps they both would be presumed to have knowledge of what's in the trunk if neither of them own the car and they're both driving? I don't think so. Because in this case, Mr. Brown specifically stated that the vehicle was owned by one of his cousins, not by Mr. Horn. And that's a, this is on the video, I believe, the Trooper Meltzer video, it's at E Exhibit 2-6 at 1408. And then Mr. Brown made additional statements to the officer about that the vehicle was owned by one of his cousins and that the ashes in the urn were his uncle's. But he didn't say that the car was owned by Mr. Horn. Which it wasn't. So I think that this, it's too speculative. And I don't think that that establishes proof of knowledge beyond a reasonable doubt. Essentially, the state relied solely upon the post-arrest statement from Mr. Horn that the ashes were his father's. But there's absolutely no evidence that even if that statement were to be coming in, that he ever possessed the urn or that he knew that there's contraband placed in it. Another critical issue as to reasonable doubt is the fact that the state misplaced the urn in between the time of the arrest and the trial. They don't know where it went. So there was never an opportunity for any fingerprinting or DNA testing or anything else. And under People v. Hall, that factor leads to reasonable, or can be taken into account in determining whether or not there's reasonable doubt. Because all of the officers and all the state's witnesses testified that the last time they saw the urn, it was sitting on a table at the Station 5 precinct. And then it was just gone. So I don't believe that the state proved the aspect of knowledge sufficient to establish the constructive possession or possession with intent to deliver. Miss Hamilton, I don't mean to throw you off your game here, but the trial court relied on the case. Absolutely. Marilyn v. Pringle is very distinguishable because in that situation, the contraband was actually found in the glove compartment, which was directly in front of the passenger and it was not locked. The court noted that, okay, wait, there's $763 in cash. And then there's five baggies of cocaine in the armrest that are all packaged for delivery. And it was easily accessible. It was easily viewable because of the positioning of the contraband. Whereas in this case, Mr. Horn was in the passenger seat and the cocaine was not individually packaged. It was in a large bag and hidden inside a sealed arm. And that actually kind of goes into my next point as well, where the factors concerning intent to maintain control, which again, the three factors in Bogan, McIntyre, and Ingram, ownership of the car, the presence of the defendant's possessions nearby, and the defendant's ability to access the item. So in this case, we've already established obviously neither Mr. Brown nor Mr. Horn owned the car, but there are definitely no statements connecting Mr. Horn to the car whatsoever. There was no presence of the defendant's possessions anywhere in the car. And I think that's a factor that further demonstrates that there's no intent to access the item. As this court noted in Ingram, and as the other courts noted in Bogan and McIntyre, other evidence would be necessary, such as did the defendant have a key to the trunk, or was there any testimony that the defendant had been in the trunk? In this case, there was none of that. So I don't believe that the state proved knowledge and intent to maintain control beyond a reasonable doubt. As to the intent to deliver portion, I believe that people be again, I've got all these lists of factors. It's very, very educational for me as I'm going through and making lists. But there's seven different factors that they can take into account. Number one is the amount. Now, in this case, that's the only factor that actually the state was able to use because none of the other ones, there's no evidence supporting any of those other factors, including purity, presence of weapons, cash, police scanners, drug paraphernalia, or what about the previous intent to deliver case as it relates to his intent here? Absolutely. And again, Your Honor, we contend that that should have been excluded under 404B and under Rule 403, because essentially, the state was able to use those prior convictions and the amount to circumvent the fact that they didn't have any evidence of any of the other factors in this case. Well, how do you distinguish the Watkins case out of the third district as it relates to intent to deliver? You know, Judge, I would have to look that up really quick in my brief. Can you refresh my memory about the Watkins case? The Watkins case is the case where the third district said that a prior intent to deliver is admissible to show intent without any kind of threshold similarity finding or really a balancing act. Yes. And I thank you, Your Honor. I apologize. I guess the only answer to that would be that the second district is not bound by the third district's finding. I think that it was more prejudicial in this case, given the absence of the other factors, but that's really the only argument that I think I can make to this court on that one. I have one other question. Sorry, Justice George. Oh, by all means, go ahead, Justice Brennan. Well, here's my question. Intent is one thing, but it's separate and apart from proof of possession first. Is that a way to distinguish Watkins? Oh, absolutely, Your Honor. I think I was just more trying to answer the intent question, intent to deliver possession with intent. There still has to be possession. Oh, absolutely. Intent is only one element. Absolutely. Absolutely. And if this court finds that the state failed to meet its burden on possession, then obviously the possession with intent to deliver goes away as well. Let me ask an additional question. So to my mind, if the earned statement comes in, I find it difficult to conclude that the defendant was not proven guilty beyond a reasonable doubt. It's all about the earned statement from my standpoint. So let's assume for the moment that everything that was known to the police officers was insufficient to arrest him on a probable cause analysis. What about the fact that the troopers knew that three hours earlier, he was driving the vehicle with a suspended license? I mean, I recognize that's not the reason they arrested him, but aren't there, isn't there case law for the proposition that nevertheless, if there's another basis for arrest that was known to the officers at the time that would defeat any kind of an argument that was not probable cause for the reasons chosen by the state? I don't respect that. I don't think so, judge, because I think that that requires this court to speculate. If you are being arrested for driving on a suspended license three hours earlier, I don't know that we would have to speculate as to whether or not he would have made a statement about the ashes in the urn or things like that. He was arrested and then he made the state about specifically about the presence of cocaine in the urn. So I think that would require the court to speculate. And I think that that would be improper. If this court finds that the arrest lacked probable cause, then I think that that a reversal is required. What would the speculation be? I just, I'm not exactly following. What Mr. Horn would have said had he been arrested for driving on a suspended license three hours prior to this arrest? I think, okay, I respect that. But I think what I'm suggesting is that if there's probable cause to arrest somebody in general that has not dissipated, and I think that would be the argument here, then the fact that they arrested him for some other reason, three hours later, does that somehow do an end run around your probable causer? I don't believe so, Judge. I think that, again, that the case law says that the probable cause has to be particularized for the crime in which the person is being arrested for. And I think that the state should not be permitted to kind of reverse engineer probable cause for a different crime to avoid the errors that were committed in this particular trial. Essentially, I think I'm running out of time, so I'll wrap up very quickly. It's our contention that the state lacked probable cause to effectuate their arrest, that the post-arrest statement should have been suppressed, and that at the end of the day, the state failed to prove both possession and possession with intent to deliver beyond reasonable doubt. So we would ask for a reversal, although alternatively, we would ask that the sentence of 24 years for being a passenger in a car in which drugs were found in the trunk was excessive, and we would ask the court to either reduce that sentence or to remand this matter for resentencing. Thank you. Oh, sorry. Counsel, then are you prepared to proceed? I am. Thank you. Thank you, Your Honor. Good morning, Counsel, and may it please the court. I think real quickly here, I'd like to just focus on one item that was discussed earlier when Counsel was talking about the urn being misplaced. That is actually not true. That was testified to by Trouber-Melzer. The urn was taken to Plaza 5 where the defendant was questioned, and then the urn was actually returned to the trunk of the vehicle, to the car. So they did not misplace it. They took pictures of the urn, and the bag that contained the cocaine, that was taken for fingerprinting. So the fact that the urn wasn't presented in court, it wasn't relevant. The baggie essentially was the contraband. So, and then there were fingerprints taken of the bag. So I just wanted to clear up that point. They didn't feel it was necessary that Dad had to go to court, right? I'm sorry, can you repeat that? I made a joke. I said they didn't feel it was necessary that Dad had to go to court. Oh, I might need to turn the volume up just a little scotch here on my screen. Wouldn't the better practice here have been, you have them both on a suspended license, correct? Arrest them both on a suspended, take the car, and then search it as an inventory search. Would we be in a different position here today, or would the knowledge still have to be inferred as to whether or not they knew that those drugs were in the truck? Or would you be in a better position? Yes, thank you, Your Honor. At the time that the occupants of the vehicle had their information run, the officer had awareness that neither of them had valid license. The driver of the vehicle, Marcus Brown, had a suspension in Wisconsin, and the defendant in this case was revoked here in Illinois. So at that point, neither of them would be able to leave the scene. And the car, for the safety of everyone in the highway, the car would have had to have been impounded and searched. So that is why the people had presented the inevitable discovery doctrine as a basis for this court to find that this evidence was properly admitted and should not have been suppressed. And then there was actually a statement to that effect from Officer Melzer at the motion to suppress hearing. He said that the tow inventory was, the reason that he wanted the free air sniff of the vehicle was because a tow inventory wasn't as thorough. So the reason that he wanted, after he obtained conflicting stories from the two search. So essentially the free air sniff would have allowed them to open up the panels of the windows, kind of get in crevices and nooks and crannies in the car that would not have just been the general run-of-the-mill inventory search, which is just to clear, you know, obvious, open obvious items out of the car. Just look in the obvious parts of the car. Mr. Barrett, can I just ask a question? Is the state conceding that this is a instructive possession case? Yes. Okay. And then let me ask you this. You briefly alluded to the conflicting statements as to what Brown and the defendant were doing prior to the stop. What's the relevance of variations in those two statements? If it cannot be determined who's telling the truth. I mean, a lot of times, you know, you ask a defendant, a cop asked a defendant a question and it's readily apparent to the cop that he or she's being lied to, you know, that's suspicious. This is a slightly different scenario because one, you can come up with explanations for why they're not even consistent as opposed to being incomplete, but even assuming they're inconsistent, you don't know which one's telling the truth. So how is that particularized to this defendant in terms of probable thoughts? Well, I think that goes toward, you know, obviously this defendant had something to hide. The statement that he gave the trooper, Taylor, who approached the passenger side of the vehicle after he entered the scene, I think three minutes after the vehicle was initially pulled over, he asked the defendant, you know, what had you guys been doing that day? And then this is standard procedure. He testified that this is just standard to approach a vehicle where the, where the occupant, one of the occupants might be, you know, back in the other vehicle where the if there's a passenger that you would approach that passenger and just question them generally. So he got a story from him that they had gone to Nike town in Chicago to purchase shoes for the defendant's daughter. Now he, trooper Taylor relayed that information to trooper Melzer, who, who had asked whether they had done any shopping that day to Marcus Brown, who was the driver. And he had denied they had done any shopping. They had not gone and done any shopping in Chicago. So clearly. Did he deny that they had not done any shopping or did he indicate he didn't go shop? He indicated that they had not done any shopping that day. That was the statement that he obtained from them. Oh, Mr. Mr. Barrett, isn't this case more the facts of this case? Aren't they more like Drake than they are like Pringle? And if not, why? Well, I don't think so your honor, because in Drake, first of all, the, the backpack that contained the the $3,100 cash and drugs and contraband there, there was no particularized connection to the defendant. Because first of all, these two guys, unlike the present case were not related and that baggie and the cash they had fingerprinted, there was nothing tying that evidence to that defendant, particularly, whereas in this case, we know the urn based on the statement offered by the defendant was housing his father's ashes. That puts the cart before the horse. Because the reason for Justice Shostak's question is, should that statement be allowed to be considered? Well, let's say for a minute that that we didn't consider that statement. We still know that the, that the driver of the car, Marcus Brown, stated that the ashes were his uncle's. Now, these two guys are first cousins, the defendant and Marcus Brown, the driver. I'm unrelated to half of my first cousin's family. Right? I mean, by pure genealogy, hopefully. But for probable cause purposes, we know that these two relatives have a relationship, they're hanging out together, the urn, housing their, the relative's ashes are in the trunk, and neither, neither of these guys mentioned an urn. Neither of them had mentioned an urn, which is, that's suspicious. You have an urn. Brown, Brown acknowledges the urn. After they found it. Right. But I mean, if I'm stopped by the police, I'm not going to talk with them about everything in my trunk, whether it's innocent or not. What's the relevance of that until I'm asked about? Well, the activities that day, one of the factors the court was considering in the probable cause determination was the fact that they did not disclose that their activities that day had anything to do with transporting ashes. That's a significant factor that was missing or omitted. So as far as, as far as being one part of the trial court's consideration, that was certainly probable. We're making much ado about this urn. Because I have an urn in my trunk, do I necessarily have to be transporting it somewhere? I mean, that's part of the process of a cremation is you have a body cremated. Sometimes there's a service before, sometimes there's a service afterwards. I mean, why would they necessarily have to be transporting it somewhere? This may have been his final resting place. Maybe he wanted to be buried in the car. Who knows? I mean, how do we assign importance to that? It's definitely one factor to consider. The court considered that they had not mentioned it. They're important. It's an item of immense value to a person. So that they would be permanently. Maybe he hated his father. How do you, I mean, sure. I mean, you are, you are imposing feelings on this urn that are just nowhere in the evidence. Nothing, nothing in the, in the transcripts that would support that. Well, the fact that the trial court considered the urn as, you know, an item that was related to these guys, that was one proper consideration. Amongst the other considerations. So, you know, we can speculate as to whether the trunk was the final resting place for the dad or. But as Justice Brennan said, the urn would be related to half of the family. Was that an assumption the trial court shouldn't have made? I think it was under the circumstances appropriate. To just guess and assume. Well, their first cousins. So they're definitely a relative. That's, that's all the trial court made of that one factor. But can I just ask, they both lied about their whereabouts that day and what they were doing. Again, increases the value of the urn in the trunk and then the cocaine found in the urn. It increases the value of them trying to hide their activities. But the lying doesn't account for the probable cause. Does it? It's part of the calculus. A reasonable articulable suspicion that there's criminal activity afoot. That's one part of the calculus. But I mean, here, how do you show, I mean, okay, accepting that Brown's statement is actually in the trial record for a moment, and accepting that they may be somewhat inconsistent, Brown's statement and Brennan's statement. That doesn't mean both of them are lying. And I mean, I don't want to police the police, but at some point, when something's just suspicious, you should ask a follow-up question. Because here, there's no way to discern which of the two is telling the truth about their activities that day. So we're just going to assume they can't, they're not necessarily both lying. Don't, shouldn't the police ask more questions? Well, at that point, the conflicting stories went to the free air sniff. So the value of that was basically that, okay, we have these conflicting stories. Let's go ahead and do a free air sniff now. And it certainly supports that being done. And then following the free air sniff and the positive alert, we have the cocaine. Let me ask another question about one of the trial judge's other points. Do you have any authority for an ankle bracelet without more factoring into the probable cause calculus? Well, again, we're kind of looking at the totality of the circumstances, you know, the fact that he's... That circumstance, is there any case law that's out there? Because I haven't found it. It's not a rhetorical question that says, hey, an ankle bracelet is something we should consider for probable cause. The fact that he's driving, was seen driving on a suspended license. No, no. Ankle bracelet. Paired with the ankle bracelet. I think it connects up with all the elements, all of the different factors going on at the time and circumstances. There's nothing in the record that I've found, I just want to confirm, that suggests that the troopers knew anything about the possession with intent to deliver case, or for that matter, the reason for the ankle bracelet. Is that fair? There's nothing directly in the record that would reference that, no. Okay. You may continue. And if your honors don't have any follow-up questions or further questions, the people would ask that this court affirm the judgment below. Thank you. Thank you. All right, do you wish to reply? If I may briefly, your honor. Okay, when you're ready. Thank you. A couple of things, and I think your honors asked some really excellent and intriguing questions, and that's why I think this issue is very fascinating and important that the court decide, because again, you're dealing with an issue, what circumstances can the state essentially sentence someone to prison for 24 years for being a passenger in a car? So I appreciate your honors questions, and I think that there are a couple key factors that we really should be considering carefully. The fact that the urn was not preserved in any way, I understand counsel's argument that it was not relevant. However, just as counsel said that in Drake, there was nothing tying or particular lies to Drake tying into that backpack, and that they needed to fingerprint it and examine it and whatever. The same could have been said for this urn in particular. I think your honors are correct in that near relation to Mr. Brown would be insufficient to tie Mr. Horn to that urn. And so not only does this case fall squarely in line with Drake, and that there was no evidence pre-arrest, particular lies to Mr. Horn to tie him to that urn, just as there was no evidence in Drake tying him to that backpack. With respect to the argument about maybe the state could have worked its way around by doing an arrest on a driving off suspended, and then inventory searching the car, a couple of things. Inevitable discovery, speak to inevitable discovery. Yes, inevitable discovery. According to people VRC-ing, the burden falls squarely on the state to plead and prove inevitable discovery. And in this case, the record just simply doesn't support that. There's absolutely no evidence of what procedures or policies would have taken place, but what this court does have is counsel's statement saying that a tow inventory is not as thorough. It is not as thorough as what they did here. So we have absolutely no evidence that had an inventory search been done, is it policy and procedure just to take pictures of the trunk and inventory items? Or do they actually go a step further, that more thorough search, and open up the urn to see what's in it? There's no evidence of that. So the state could not meet its burden of inevitable discovery because there's no evidence in the record of what that procedure would have entailed. Additionally, in this case, there wasn't a tow performed. Instead, one of the troopers got in the car himself and drove it. So there wasn't a strict policy of, okay, we're going to do a tow, then we're going to do an inventory search, then here's our policy and procedure, nor is there any evidence that the state presented about how that would have occurred. So I don't think they've met their burden under people VRC-ing to allow them to invoke the inevitable discovery doctrine. If I may briefly speak about the conflicting statements, I believe Your Honor's pointed out that they really weren't that contradictory. Both the individuals said that they had gone to Chicago. Both the individuals had said that they were going to see Mr. Brown's children. Mr. Horn said that they were going to go to Niketown to buy some shoes for the children. And then Mr. Brown had said, I'm sorry, Mr. Horn said he was going to do shopping. Mr. Brown, they asked, did you guys do any shopping today? And he said, no. Now, I agree with Your Honor in that it would be highly speculative for us to try and understand, does he interpret shopping as did you buy anything? Did you both do it together? Did you not? I don't think that that's sufficient to rise the level of probable cause to arrest. Certainly not for Mr. Horn. I agree with Your Honor that the trial court improperly placed undue emphasis on the fact that no one said anything about transporting the ashes. The trial court took a big issue with that and deemed that to be suspicious and to rise to probable cause. I don't think that's the case. There's absolutely no evidence that they lied about it or that it was something that any individual would have to talk about upon being asked about what's in their trunk. Again, I would redirect this court back to the very well-raised opinion in People v. Drake because I think it is spot on. I think that just as in Drake, there's a backpack with contraband in the trunk and there's nothing materialized to a defendant tying him to that backpack or to that contraband. The state needed something more and they just didn't have it here. So we would respectfully request that Your Honors reverse the judgment below. Thank you. All right. Thank you both very much for your arguments. And we will be in recess until our third and final argument of the morning. Thank you both. Thank you. Thank you.